```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

Richard E. Williams,                    :
                                        :
       Plaintiff,                       :
                                        :
       v.                               :     File No: 1:03-CV-291
                                        :
United States of America,               :
and Harry Johnson,                      :
                                        :
       Defendants.                      :

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Paper 38)

    Plaintiff Richard E. Williams filed this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C 1346(b). Williams seeks damages for injuries he sustained when he was hit by a car driven by Defendant Sergeant Harry Johnson, a recruiter with the United States Army. The case is currently before this Court on the government's motion to dismiss the amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

    For the following reasons, I recommend that the government's motion to dismiss (Paper 38) be GRANTED.

### BACKGROUND

    For the purposes of this motion, the following facts

are taken as true. On November 3, 4, and 5, 2000, the United States held an Army recruiter training conference at Mount Snow in West Dover, Vermont. (Paper 8, ¶ 7). At that time, Williams was employed as a security guard at Mount Snow. (Id. at ¶ 8).

On November 4, Williams was working the night shift. (Paper 8, ¶ 7). While on patrol that night, Williams encountered a government-owned vehicle driven by Johnson. (Id. at ¶¶ 9-10). The vehicle was stopped on the South Access Road, and was in the traveled portion of the road. (Id. at ¶ 9). Johnson was at Mount Snow to attend the recruiter conference, and was intoxicated. (Id. at ¶¶ 14, 21-24). While Williams was standing near the driver side of the vehicle, Johnson drove the vehicle against Williams, knocking him down and causing him to sustain injuries. (Id. at ¶¶ 15-16).

Williams filed an FTCA administrative complaint with the United States Army on June 14, 2002, alleging serious injuries as a result of the incident with Johnson. (Id. at ¶ 2). The U.S. Army failed to made a final disposition of the claim for over six months, and Williams therefore filed a complaint with this Court. (Id. at ¶ 3).

Standard of Review

On a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court must read the plaintiff's complaint with generosity. See Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Taking the allegations in the complaint as true, the court must construe the complaint in the light most favorable to the plaintiff, and must draw all inferences in plaintiff's favor. See Warth v. Seldin, 422 U. S. 490, 502 (1975); Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000)(citing King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999)); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

1. 12(b)(1) Motions

A Rule 12(b)(1) motion may arise in either of two ways: 1) to challenge the sufficiency of the complaint as to subject matter jurisdiction; or 2) to challenge the factual truth of the subject matter jurisdiction allegations. Hayden v. New York Stock Exchange, Inc., 4 F. Supp. 2d 335, 337 (S.D.N.Y. 1998). In evaluating the complaint when deciding a motion under 12(b)(1), the court may look outside the pleadings to resolve disputed jurisdictional fact issues and "may hold an evidentiary hearing, if it considers that

such a hearing is warranted . . . ." <u>Filetech v. France Telecom</u>, 157 F.3d 922, 932 (2d Cir. 1998). The court may also "permit[] limited discovery with respect to jurisdictional issues." <u>Brocsonic Co. v. M/V "Mathilde Maersk"</u>, 120 F. Supp. 2d 372, 375 (S.D.N.Y. 2000). This is especially true "'where the facts are peculiarly within the knowledge of the opposing party.'" <u>Greenery Rehabilitation Group, Inc. v. Sabol</u>, 841 F. Supp. 58, 62 (N.D.N.Y. 1993)(quoting <u>Kamen v. AT&T</u>, 791 F.2d 1006, 1011 (2d Cir. 1986)). The court may dismiss the case based on lack of subject matter jurisdiction either *sua sponte* or upon motion. Fed. R. Civ. P. 12(h)(3).[1]

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must not dismiss the complaint unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>EEOC v. Staten Island Sav. Bank</u>, 207 F.3d 144, 148 (2d Cir. 2000) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). Indeed, there is an important difference

---

[1] In this case, the government initially filed a motion to dismiss in May 2005, (Paper 17) but withdrew that motion pending discovery on jurisdictional issues. (Paper 23). That discovery is now complete, and the government has filed a new motion to dismiss.

between disposing of a case on a motion to dismiss and resolving the case later in the proceedings, for example by summary judgment.  See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  Id. (citations and internal quotation marks omitted).

## Discussion

### The FTCA

Under the FTCA, a person who has suffered a "personal injury or death arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant" may sue that employee for damages.  28 U.S.C. § 1346(a)(2).  The FTCA constitutes a limited waiver of sovereign immunity.  Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998). As long as the employee was acting within the scope of his employment, the FTCA is the exclusive remedy for the injured party.  28 U.S.C. § 2678(b)(1).  If the employee was not acting within the scope of his employment, however, then

5

sovereign immunity has not been waived, and jurisdiction does not exist.

In the case of a member of the armed forces, "acting within the scope of employment" means acting in the line of duty. 28 U.S.C. § 2671. "The courts have uniformly equated the FTCA's 'line of duty' language with the phrase 'scope of employment,' as that concept is defined by the *respondeat superior* law of the jurisdiction in which the accident occurred." Taber v. Maine, 67 F.3d 1029, 1033 (2d Cir. 1995). Whether Johnson was acting within the scope of his employment is therefore determined by looking to the law of Vermont, the state in which the incident occurred. See McHugh v. University of Vermont, 758 F. Supp. 945, 951 (D. Vt. 1991).

For conduct to be within the scope of employment under Vermont law, it must be "the same general nature as, or incidental to, the authorized conduct." Brueckner v. Norwich University, 169 Vt. 118, 123 (1999). Conduct is within the scope of employment when

> (a) it is of the kind the servant is employed to perform; (b) it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the master; and (c) in a case in which the force is intentionally used by the servant against another,

6

it is not unexpectable by the master.

Id.; see also Restatement (Second) of Agency § 228.  Conduct which is different from the kind authorized by the employer, far beyond the time and space limits authorized, or "too little actuated by a purpose to serve the master" is not within the scope of employment and does not give rise to liability of the master.  Brueckner, 169 Vt. at 123; see also Restatement (Second) of Agency §§ 228; 229.

The Vermont Supreme Court recently reexamined the scope of employment test.  Doe v. Forrest, 176 Vt. 476 (2004).  In Doe, an on-duty deputy sheriff sexually assaulted a cashier in a convenience store that the deputy regularly patrolled. Id. at 479-80.  The victim then sued the sheriff's office, seeking to hold it liable for the assault.  Id.  The Vermont Supreme Court reiterated that Vermont has adopted the elements of scope of employment set out in Section 229(1) of the Restatement (Second) of Torts.  Doe, 176 Vt. at 483. The court then found that the department was not liable under *respondeat superior*, reasoning that, although the conduct occurred while the deputy was on duty, his conduct was not actuated, even in part, by a purpose to serve his employer.  Id. at 483.  The court differentiated the case

from cases such as Brueckner, in which an employee is overly aggressive in pursuing the employer's goals.  Id. at 484; see also Brueckner, 169 Vt. at 123.  The court explained that the deputy was not merely overly aggressive in performing his duties, but instead was acting purely for his own self-interest, and therefore the employer could not be held liable under *respondeat superior*.[2]  Id. at 484.

Count I: Negligence based on Johnson's Conduct

In this case, the government denies that Johnson was acting within the scope of his employment at the time of the accident.  The government argues that the accident took place during off-duty hours, that the Army had policies prohibiting employees from driving Army vehicles within eight hours of consuming alcohol, that Johnson knew of these policies, and that Johnson violated the policies when he drove the vehicle despite being drunk.

Whether Johnson was acting within the scope of his duties is a jurisdictional question.  Therefore, the Court may look to facts outside the pleadings for the purposes of deciding this motion.

---

[2] The court went on to hold the department liable under a different theory, but that theory is not relevant in this case.

On the evening of November 3, Johnson attended a required awards ceremony in his Commander's room at the resort. (Paper 38, Ex. B, pp. 44-47; Ex. E, ¶ 6). Johnson did not drink any alcohol at this ceremony, and he did not see anyone else with alcohol during the ceremony. (Paper 38, Ex. B, pp. 44-47). After the ceremony ended, Johnson was off-duty and free to do as he pleased until the next morning. (Paper 38, Ex. E, ¶ 6). Johnson returned to his own room, changed into civilian clothes, played dominoes, and began drinking. (Paper 38, Ex. B, p. 49). He later went to Sergeant First Class David Lamb's lodge room, where he, Lamb, Lamb's wife, and several other people socialized and drank alcohol. (Paper 38, Ex. B, pp. 49-54; Ex. E ¶ 7). Sometime after midnight, Johnson fell asleep on Lamb's couch. (Paper 38, Ex. E ¶ 8). Lamb's wife got a pillow and blanket for Johnson, and Lamb and his wife retired for the night, expecting Johnson to remain on the couch. (Id.). Around 2:00 in the morning, Johnson awoke and began driving back to his room in his government vehicle. (Paper 38, Ex. B, pp. 54-57). On his way back to his room, Johnson became lost, stopped the car, and passed out. (Id. at p. 57). He awoke when Williams knocked on his window and asked him to

move the car out of the middle of the road.  (Id.).

Williams argues that the following facts demonstrate that Johnson was acting within the scope of his employment: the training conference was mandatory, Johnson was required to drive a government vehicle to the conference, and Johnson was required to stay at Mount Snow during the conference. He argues that this made Mount Snow a *de facto* Army base, that Johnson's drinking and driving were incident to his military service, and that therefore the accident did occur within the scope of Johnson's employment.

Although the Army did rent Mount Snow for the purposes of its training conference, there is no evidence that the Army controlled any portion of the property.  At oral argument, counsel agreed that 1,071 people were present at the conference, including 460 Army members.  The government asserted that no Army security was stationed at the entrances to the resort, that anyone was permitted to enter the resort, and that the Army members were free to come and go from the resort when they were not required to be in a session.  Indeed, Williams was patrolling the area as a security guard for Mount Snow, not as an Army employee.  As the government argues, it appears that the Army recruiters

10

were business invitees, and the Army simply paid to obtain services that any private group could also have obtained. As such, there is no evidence that Mount Snow was ever a *de facto* base.

Williams further argues that Johnson's conduct was an incident to his employment with the Army, bringing it within the scope of employment test.  In making this argument, however, Williams conflates cases dealing with the scope of employment with the line of cases under the Feres doctrine.

In Feres, the Supreme Court held that servicemen and women were not permitted to *recover* under the FTCA for injuries arising either from their service or in the course of activity incident to their service.  Feres v. United States, 340 U.S. 135, 146 (1950).  By excluding recovery for injuries incurred during activities incident to service, Feres uses a much broader test than simply the scope of employment.  See Taber, 67 F.3d at 1037-38.  Williams was not employed by the Army at the time of the accident, however, and as such the Feres doctrine is inapplicable to this case.  Id. at 1042 ("Feres bars the suit only if the injured party is a member of the military.").  As such, scope of employment, and not line of duty, is the

11

appropriate test for determining whether the FTCA applies.

Johnson was employed by the Army as a recruiter. Although he was required to attend the three day training at Mount Snow, he did not begin drinking until after he was off-duty. (Paper 38 Ex. B, p. 49). The party he attended at Lamb's lodgings was a social event, not a required part of the conference. Johnson changed into his civilian clothes before attending. Drinking alcohol was not in the scope of Johnson's duties as a recruiter. In addition, he had already been told he could spend the night in Lamb's room rather than drive back to his lodging, and in fact had fallen asleep on Lamb's couch. When Johnson did wake up at two in the morning, there was no reason for him to leave Lamb's room. In fact, Sergeant Anglin, another recruiter who had also fallen asleep in Lamb's room, tried to convince Johnson not to leave. Johnson was off-duty at the time of the accident, and his actions were outside the authorized time of his employment.

Johnson relies heavily on the Second Circuit decision in Taber and California cases to show that Williams's action were within the scope of his employment. In Taber, the Second Circuit found that the government would be liable in

12

a case involving a member of the military who had been drinking off-duty and caused an automobile accident.  Taber, 67 F.3d at 1034-35.  That case applied California law, however, which the court noted was very expansive.  Taber, 67 F.3d at 1034-35.  For example, in Childers v. Shasta Livestock Auction Yard, Inc., a California intermediate appellate court held that an employer was liable for the actions of its off-duty employees, when the employer provided alcohol and permitted the employees to drink on work premises after hours.  Childers, 190 Cal. App. 3d 792, 806 (Cal. Ct. App. 1987).  Vermont law is much narrower than California law.  Even if Childers did apply in this case, however, that case is distinguishable on the facts.  In Childers, the employer regularly drank alcohol with the employees, both during and after business hours, had entrusted the keys to the employees, and had specifically told them to "go get a beer" before he left for the night. Id.  There is no evidence that Williams regularly drank alcohol with his fellow recruiters during the work day. Williams had been released from duty for the day, had returned to his room, changed into civilian clothes, and only then had begun drinking alcohol.  (Paper 38, Ex. B p.

49; 87-88).  He later attended a party at Lamb's room, but that event was purely a social event.  (Id. at 87-88).  As such, the government would not be liable even under Childers, and sovereign immunity has not been waived.

Under Vermont law, there is a rebuttable presumption that an employee is acting within the scope of his employment when he is driving the employer's vehicle when an accident occurs.  Cappello v. Aero Mayflower Transit Co., 116 Vt. 64, 65 (1949).  The presumption is rebutted when the employer shows that the vehicle was not being used for the employer's purposes.  Id.  In this case, Johnson was required to drive his Army vehicle to the conference.  The accident occurred when Johnson was off-duty, however, after Johnson had already driven back to his lodging at the end of the day's required activities.  Johnson went to the party at Lamb's room for purely social reasons, and not for the Army's purposes.  As such, the government has rebutted the presumption.

Williams argues that Johnson's middle of the night drive "was actuated by a purpose unquestionably to rest, sober up and be ready for the continuation of the conference the next morning."  (Paper 39 p. 20).  Even assuming that

Johnson did intend to rest and sober up so that he could be ready for the conference the next morning, however, this is not enough to bring his actions within the scope of his employment with the Army, and Johnson cannot be said to have been actuated by a purpose to serve his employer.  As such, his actions were not within the scope of his employment, and Count I should be dismissed for lack of subject matter jurisdiction.[3]

### Count II: Negligent Supervision

Williams also brings a claim based on the Army's negligent supervision of Johnson.  He argues that Johnson's supervisors failed to exercise reasonable care in protecting third parties from foreseeable danger.  The government argues that the Army, specifically Lamb and Clark, was not under any obligation to supervise Johnson in his off-duty conduct.  As such, any failure to supervise Johnson was outside the scope of the employer's duty, and Williams is barred from bringing such a claim under the FTCA.

Under Vermont law, there is no general duty to control

---

[3] As the government notes, claims against Johnson in his official capacity are barred under the FTCA, as the exclusive remedy is against the United States when an employee is acting in his official capacity.  28 U.S.C. §§ 2674, 2679(b)(1).

the actions of another in order to protect a third person from harm. <u>Bradley v. H.A. Manosh Corp.</u>, 157 Vt. 477, 480 (1991). Vermont courts have recognized an exception to this rule when "a special relationship between two persons which gives the one a definite control over the actions of the other." <u>Id.</u> (quotations and citations omitted). Such a relationship may arise when an off-duty employee is negligent while on the employer's premises or while using the employer's chattel. <u>Id.</u>; <u>Poplaski v. Lamphere</u>, 152 Vt. 251, 256, (1989). Liability for negligent supervision in such cases is governed by Section 317 of the Restatement (Second) of Torts, which provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and

opportunity for exercising such control. Restatement (Second) of Torts § 317.  In addition, "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."  Restatement (Second) of Torts § 319.

In this case, the Army had a policy that its employees not drive government vehicles within eight hours of drinking.  (Paper 38, Ex. B p. 90).  Participants at the conference at Mount Snow were reminded not to drive if they had been drinking, but to call for a ride or walk instead.  (Id. at 84-85).  No alcohol was provided to Johnson at the official events of the conference on Friday; he only began drinking once he was off-duty.  (Id. at p. 49).  The party at Lamb's room was a purely social event.  (Id. at pp. 87-88; Ex. E ¶ 7).  In addition, Lamb told Johnson he could remain at Lamb's room for the night, rather than allow Johnson to drive back after drinking.  (Paper 38, Ex. B p. 88; Ex. E ¶7).  When Lamb retired for the night, Johnson was sleeping on Lamb's couch, and Lamb had no way of knowing that Johnson would awaken and drive back to his room.

(Paper 38, Ex. E ¶ 8).  At all times that alcohol was present, both Lamb and Johnson were off-duty.

The Army "does not have a duty to control the actions of an off-duty soldier." Wise v. United States, 8 F. Supp. 2d 535, 549 (E.D. Va. 1998).  As such, Lamb was under no duty to supervise Johnson, and in fact, could not control Johnson's actions after the party.  Lamb took reasonable precautions to prevent Johnson from driving while intoxicated, even though he was under no duty to take such precautions.

In addition, there is no evidence that Lamb or the Army knew or had reason to know of the need to control Johnson. The Army had a policy that no one was to drive a government vehicle within eight hours of drinking alcohol.  At the conference, the recruiters were reminded not to drink and drive.  There is no evidence that Johnson had a history of driving while intoxicated, breaking Army rules, or that he had a problem with alcohol.  There was no reason to believe that Johnson would awaken in the middle of the night and drive while he was still intoxicated, in direct violation of the Army's policy.  Williams has not shown that any of Johnson's employers or supervisors failed in their duty to

supervise him, and Williams cannot show that the Army has waived its sovereign immunity with respect to this claim. I therefore recommend that this Court dismiss Count II of the complaint.[4]

## CONCLUSION

For the foregoing reasons, I recommend that this Court GRANT the government's motion to dismiss. (Paper 38).

Dated at Burlington, in the District of Vermont, this 19th day of July, 2005.

<pre>
                    /s/ Jerome J. Niedermeier
                    Jerome J. Niedermeier
                    United States Magistrate Judge
</pre>

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

[4] Because Williams has not shown that the Army had any duty to supervise Johnson, there is no need to address the government's 12(b)(6) motion. If there were, however, I would recommend that this Court grant that motion, as the Army and Johnson's direct supervisors took reasonable precautions to prevent accidents such as this one, and could not predict that Johnson would awaken in the middle of the night and decide to drive back to his room for his own purposes.